**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
In re:
                                                                                                  Chapter 13

Thomas E. Manning, Jr.,
                                                                                                  Case No. 14-37279 (CGM)
                                                     Debtor
-------------------------------------------------------- x

# MEMORANDUM DECISION AND ORDER

**A P P E A R A N C E S :**

Schiller, Knapp, Lefkowitz & Hertzel, LLP
950 New Loudon Road
Latham, New York 12110
*Attorneys for Ford Motor Credit Company, LLC,*
*as agent for CAB East, LLC*
By:             Martin A. Mooney

Law Office of Carol Richman, PLLC
94 Hasbrouck Rd.
New Paltz, NY 12561
*Attorneys for the Debtor*
By:             Carol P Richman

Jeffrey L. Sapir
399 Knollwood Road, Suite 102
White Plains, NY 10603
*As Chapter 13 Trustee*

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

   Before the Court is the motion of Ford Motor Credit Company LLC ("Ford) for approval

to file an administrative claim in the chapter 13 case of Thomas E. Manning, Jr., the Debtor here

("Debtor"). *See* Mot. for Admin. Claim, ECF No. 89.[1]  Pursuant to the Debtor's confirmed chapter 13 plan, this Court gives Ford leave to late file a Section E claim consistent with Categories 3 and 4 of the confirmed chapter 13 plan.

## Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012.  This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A), matters concerning the administration of the estate, and under § 157(b)(2)(B), determination of claims against the estate.

## Background

The Debtor filed this chapter 13 case on November 18, 2014.  *See* Petition, ECF No. 1.  The deadline for filing proofs of claim was March 10, 2015.  On November 26, 2014, Ford on behalf of Lincoln Automotive Financial Services ("Lincoln") filed a proof of claim in an amount of $15,929.24, on account of Debtor's lease of a 2013 Lincoln MKX (the "Vehicle").  *See* Claim #3-1 at 1, 4.[2]  The proof of claim states that 27 payments remained at the time of filing, that monthly payments were $589.87, and that the lease had a termination date of March 11, 2017.  *See id.* at 1.  Ford's proof of claim indicated that there were no arrears at the time of filing.  *See id.*

On January 23, 2015, this Court entered a signed stipulation between the Debtor and Ford, whereby Debtor agreed to assume the Vehicle lease pursuant to the terms of the lease agreement.  Stip. and Order, ECF No. 24.  The assumption was to be incorporated into an amended plan and any resulting confirmation order.  *Id.* at 1–2.

---

[1] Unless otherwise indicated, all citations to litigation documents can be found on the docket of case number 14-37279.
[2] Proofs of claim filed in Debtor's case are available on the claims' register for case number 14-37279.

Debtor confirmed a chapter 13 plan on July 1, 2016. Order Confirm. Chap. 13 Plan, ECF No. 87. The confirmed chapter 13 plan provided for ongoing monthly payments of $589 to Lincoln on account of the Vehicle lease. *See* Am. Chap. 13 Plan at 5, ECF No. 83; Claim #3-1 at 4. The chapter 13 plan did not provide for the assumption of Ford's Vehicle lease. *See* Am. Chap. 13 Plan at 4, ECF No. 83. Debtor returned the Vehicle on March 9, 2017, consistent with the scheduled termination date of the lease. *See* Mot. for Admin. Claim at 1, ECF No. 89.

At the time of return, Ford claims Debtor owed certain charges on account of the Vehicle lease, including excess mileage and wear and tear in the amount of $2,116.75, and taxes of $171.47, for a total of $2,288.22. *See* Mot. for Admin. Claim at 1–2, ECF No. 89; Ex. C at 2, ECF No. 89-4; Malone Aff. at 1, ECF No. 89-5. Ford also asserts it is owed additional attorneys' fees of $325 that were incurred during the pendency of the case. Mot. for Admin. Claim at 2, ECF No. 89. Ford now seeks permission to file an administrative claim pursuant to Bankruptcy Code § 503(b)(1)(A), for the expenses Ford incurred for excess mileage, wear and tear, taxes, and attorneys' fees, in the amount of $2,613.22. *See id.* at 2; *see also* Mem. Law in Supp. at 2, ECF No. 90. Ford claims that the administrative expense claim is allowable under Bankruptcy Code § 503(b)(1)(A), as an actual and necessary cost of preserving the bankruptcy estate. Mem. Law in Supp. at 2, ECF No. 90.

## Discussion

Ford asserts it is entitled to a § 503(b) administrative claim for certain fees generated by the Debtor during the pendency of the Debtor's chapter 13 plan. *See* Mot. for Admin. Claim at 1–2, ECF No. 89; *see also* Mem. Law in Supp. at 2, ECF No. 90. Ford argues that under Bankruptcy Code § 503(b)(1)(A), administrative expenses are allowed for the actual and necessary costs of preserving the estate, and that here, the Debtor's use of the vehicle contributed

to the preservation of the bankruptcy estate. Mem. Law in Supp. at 2, ECF No. 90. Ford not only fails to explain why the assumption of a lease that is subsequently rejected may, in certain circumstances, give rise to an administrative claim for the resulting damages, Ford fails to argue the necessary point of rejection. Luckily for Ford, as long as the Debtor properly assumed the Vehicle lease through the chapter 13 plan, the plan provides procedures regarding the kinds of claims Ford wishes to recover.

Under Bankruptcy Code § 365(a), "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." If a chapter 13 trustee does not reject or timely assume a lease of personal property at any time before confirmation of the plan, "the leased property is no longer property of the estate and the stay under section 362(a) is automatically terminated." 11 U.S.C. § 365(d), (p)(1). Even if the chapter 13 trustee fails to take any demonstrable action on a debtor's unexpired leases, a chapter 13 debtor may still assume an unexpired lease at the time of confirmation. Chapter 13 debtors are allowed to assume or reject any unexpired lease through the chapter 13 plan, as long as the trustee has not already rejected the lease under § 365. *See* 11 U.S.C. § 1322(b)(7). Pursuant to Bankruptcy Code § 365(p)(3), if a chapter 13 debtor's lease of personal property "is not assumed in the plan confirmed by the court, the lease is deemed rejected as of the conclusion of the hearing on confirmation."

Here, the Court entered a signed stipulation in which both parties agreed the Debtor would assume the Vehicle lease through the chapter 13 plan, and that the stipulation would be incorporated into the plan and confirmation order. Stip. and Order, ECF No. 24. While the Debtor's amended plan did not indicate any leases were being assumed, it did provide for ongoing payments to Ford on account of the Vehicle lease. Am. Chap. 13 Plan at 4–5, ECF No.

83.  Despite the plan's failure to indicate the Debtor was assuming the Vehicle lease, the language of the stipulation and order expressly incorporates the assumption into any amended plan and confirmation order.  Stip. and Order, ECF No. 24.  As such, this Court will give effect to the parties' intentions and the signed stipulation and order, and treat the Debtor's confirmed chapter 13 plan as if it had assumed the Vehicle lease.

A lease assumed in a chapter 13 plan becomes property of a debtor upon confirmation of the plan.  Under Bankruptcy Code § 1327(b), "the confirmation of a [chapter 13] plan vests all of the property of the estate in the debtor."

An assumption of a lease should be indicated in Category 3 of the standard chapter 13 plan.  As Debtor assumed the Vehicle lease, Ford must abide by the enumerated terms and conditions in Category 3 of the plan.  Category 3 of the plan requires creditors to comply with additional terms further explained in Section E of the plan.  The additional terms specified in Category 3 include

> any of the following:
> (1) any claim for additional amounts during the pendency of the Debtor's case due to a change in the terms of the executory contract or unexpired lease;
> (2) any claim for Outstanding Obligations (defined below) that may arise during the pendency of the Debtor's case; or
> (3) any claim for compensation of services rendered or expenses incurred by the Creditor during the pendency of the Debtor's case.

Am. Chap. 13 Plan at 5, ECF No. 83.

Debtor explicitly included the lease agreement in Category 4.  Category 4 of Debtor's plan, which provides for "Claims secured by Personal Property," included a monthly lease payment to "Lincoln Automotive Fin," in the amount of $589 a month.  *Id.*  Debtor included the lease payments to Lincoln Automotive in Category 4(c) of the plan, which provides for "Post-Petition Payments."  Pursuant to Category 4(c), "Debtor shall pay the following Post-Petition

Payments directly to the Secured Creditor listed below during the pendency of the Plan . . . ." *Id.* Secured creditors receiving post-petition payments pursuant to Category 4(c), directly from the Debtor, are also required to comply with Section E of the plan, "with regard to any Notice of Contract Change (as defined in Section E) or other applicable notice as required by Section E or Bankruptcy Rule 3002.1." *Id.*

Upon confirmation of the plan, both Debtor and Ford were bound by the terms of the chapter 13 plan, including Category 3 and 4 requirements to comply with Section E. 11 U.S.C. § 1327(a). A confirmed chapter 13 plan is *res judicata*. *See Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370, 373 (B.A.P. 1st Cir. 2001); *Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee)*, 193 F.3d 1083, 1086 (9th Cir. 1999). The terms are binding even where the confirmed plan contains legal error. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010).

Here, Category 3 of the standard chapter 13 plan specifically refers to Section E's provisions regarding any claim arising from a change in the terms of the executory contract or unexpired lease, for Outstanding Obligations, and for compensation of services rendered or expenses incurred during the Debtor's chapter 13 case. Category 4 also requires the creditor to comply with any applicable notice provision required by Section E.

Section E of the chapter 13 plan defines Outstanding Obligations as "any obligations arising after the filing of this case that the Creditor or Secured Creditor believes are recoverable against the Debtor or against the Debtor's property." Am. Chap. 13 Plan at 7, ECF No. 83. The definition further explains that "Outstanding Obligations include, but are not limited to, all fees, expenses, or charges incurred in connection with any Agreement . . . ; insurance premiums; appraisal costs and fees; taxes; costs associated with the maintenance and/or upkeep of the property; and other similar items." *Id.* Within 30 days of incurring any Outstanding Obligations,

the creditor is required to file a notice of Outstanding Obligations on the claims register referencing the specific sections of the agreement that allow for reimbursement of the services or expenses.  *Id.*

Section E of the chapter 13 plan expressly states that services or expenses incurred by the creditor during the pendency of the Debtor's case that qualify for compensation are limited to those included in the creditor's agreement with the Debtor.  The chapter 13 plan requires the creditor to file a fee application, setting forth a detailed statement regarding "(1) the services rendered, time expended and expenses incurred, and (2) the amounts requested."  Am. Chap. 13 Plan at 8, ECF No. 83.  The creditor must also point to the specific section of the agreement that allows for the reimbursement of the services and expenses.  The subsection goes on to state in bold that "[**f]ailure to comply with the provisions in this subsection may result in disallowance by the Court of such fees and expenses.**"  *Id.*

Perhaps most importantly, the confirmation order adds the following dimension to all of Section E:  "**Failure to comply with Section E of the Plan may result in disallowance of such claims.**"  Confirm. Order at 4, ECF No. 87.

While Ford is trying to reshape the post-confirmation fees and expenses it incurred on account of the lease as an administrative claim entitled to priority, Section E of the confirmed chapter 13 plan already determines how Ford's claim for expenses and attorneys' fees should be treated.  Ford wants to be reimbursed for post-confirmation expenses, including excessive mileage and wear and tear on the Vehicle, for taxes, and attorneys' fees incurred in connection with the Vehicle lease agreement.

Ford's request to recover excessive mileage fees, wear and tear, and taxes is plainly covered under the plan's Outstanding Obligations, defined in Section E as "all fees, expenses, or

charges incurred in connection with any Agreement, such as any amounts that are due or past due related to unpaid escrow or escrow arrearages; insurance premiums; appraisal costs and fees; taxes; costs associated with the maintenance and/or upkeep of the property; and other similar items." Am. Chap. 13 Plan at 7, ECF No. 83. Costs for excessive mileage and wear and tear and taxes are explicitly covered under Section E's Outstanding Obligations as "fees, expenses, or charges incurred in connection with any Agreement," including taxes.

If Ford wished to recover on these Outstanding Obligations, Section E of the plan allows Ford to do so:

> At any time during the pendency of the Debtor's case, a Creditor or Secured Creditor shall file on the Claims Register and serve upon the Trustee, Debtor, and Debtor's counsel (if applicable) a notice containing an itemization of any obligations arising after the filing of this case that the Creditor or Secured Creditor believes are recoverable against the Debtor or against the Debtor's property (the "Outstanding Obligations").

Am. Chap. 13 Plan at 7, ECF No. 83. If Ford believed it could recover against the Debtor or Debtor's property, Ford should have filed a notice on the claims register and serve the chapter 13 Trustee, Debtor and Debtor's counsel. Ford also had to comply with the procedures for noticing an Outstanding Obligation, outlined in Section E of the plan:

> Within thirty (30) days after the date such Outstanding Obligations were incurred, a Notice of Outstanding Obligations shall be filed on the Claims Register, sworn to by the Creditor or Secured Creditor pursuant to 28 U.S.C. § 1746, referencing the paragraph(s) (or specific section(s) and page number(s)) in the Agreement that allows for the reimbursement of the services and/or expenses.

*Id.* Debtor is given the right to file a motion objecting to the amounts listed on the Notice of Outstanding Obligations.

In this case, Debtor returned the vehicle to Ford on March 9, 2017. Mot. for Admin. Claim at 1, ECF No. 89. On April 11, 2017, roughly 33 days later, Ford filed a motion to approve an administrative claim instead. Assuming that the expense was incurred a short time

after the Debtor returned the Vehicle, Ford's motion to approve an administrative claim would seem to have been within the 30 day timeframe. Ford's motion to approve an administrative claim included the lease agreement as an exhibit. With the motion, Ford filed an affidavit of service indicating that the chapter 13 trustee, Jeffrey L. Sapir, ("Trustee") the Debtor's counsel, and the Debtor were all served with the motion on April 11, 2017. Ford did not file a Notice of Outstanding Obligations on the claims register.

As for attorneys' fees, Section E requires a creditor to comply with Rule 2016 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule"), Local Bankruptcy Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York ("Local Bankruptcy Rule"), and Bankruptcy Rule 3002.1, if applicable. Pursuant to the above rules, the creditor seeking reimbursement "must file an application with the court if it wishes to be compensated from the Debtor or the estate for services rendered or expenses incurred by its professionals after Debtor's filing of this Petition and before the issuance of the Notice of Discharge." Am. Chap. 13 Plan at 8, ECF No. 83. The application must include

> a detailed statement setting forth (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. The application shall include a statement sworn to by the Creditor or Secured Creditor pursuant to 28 U.S.C. § 1746 that references the paragraph number(s) (or specific section(s) and page number(s)) in the Agreement that allows for the reimbursement of the services and/or expenses.

*Id.* An application for fees must be filed no later than 30 days after the notice of discharge is issued. *Id.* Failure to comply with the requirements for reimbursement of professional fees is grounds for disallowance. *Id.* Debtor may also object to any application for fees by a creditor under this subsection. *Id.* Ford's time to file an application for fees has not yet lapsed.

11 U.S.C. § 501(a) provides that "[a] creditor or an indenture trustee may file a proof of claim." Under § 501(c), "[i]f a creditor does not timely file a proof of such creditor's claim, the

debtor or the trustee may file a proof of such claim." The claim will be "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).

Section E of the chapter 13 plan permits Ford to file a claim for Outstanding Obligations. While Ford did not follow Section E of the Debtor's chapter 13 plan, and did not file a Notice of Outstanding Obligations on the claims register, Ford did file a motion for approval of an administrative claim on the docket, and served it on all required parties. No one has objected to the motion. The end result would be the same if Ford had filed the Notice of Outstanding Obligations on the claims register. Once a claim is filed it is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). Ford must file the Notice of Outstanding Obligations for excessive mileage and taxes on the claims register as required. The Court will allow the late filing even though it is beyond the 30 day time limit.

As for the attorneys' fees, Ford was required to follow Bankruptcy Rule 2016 and Local Bankruptcy Rule 2016-1. Ford cannot submit a claim for professional fees in the same manner as an Outstanding Obligation. All Bankruptcy Rules must be observed before Ford is entitled to any reimbursement. Ford must follow Section E of the Debtor's chapter 13 plan regarding reimbursement of costs and fees of professionals.

### Conclusion and Order

Upon Ford's motion for approval to file an administrative claim, the May 9, 2017 hearing held upon the record, and for the foregoing reasons, it is now

**ORDERED**, that Ford is given leave to late file a Section E claim, and is also required to file a Notice of Outstanding Obligations for excessive mileage and taxes on the claims register as required by Section E of the plan by May 16, 2017, in order to receive payment on its claim; and it is further

**ORDERED**, that Ford must follow Section E, Part III of the Debtor's confirmed chapter 13 plan, which governs "Application for Reimbursement of Costs and Fees of Professionals," if Ford wishes to recover any attorneys' fees; and it is further

**ORDERED**, that any attorneys' fees Ford seeks to recover may not be filed as part of a Section E, Part II claim for Outstanding Obligations.



**Dated: May 9, 2017**
      **Poughkeepsie, New York**

**/s/ Cecelia G. Morris**
_____
**Hon. Cecelia G. Morris**
**Chief U.S. Bankruptcy Judge**